# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| SCOTT CROSBY and KARISSA CROSBY, individually, and on behalf of their son JAKE CROSBY,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA, *ET AL.*,<br><br>Defendants. | Case No.: SACV 17-01970-CJC(JDEx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

On September 6, 2017, Plaintiffs Scott Crosby and Karissa Crosby filed a complaint in the Superior Court for the County of Orange alleging four state law causes of action against California Physicians' Service d.b.a. Blue Shield ("Blue Shield"),

Magellan Health, Inc, ("Magellan"), and Human Affairs International of California ("HAI-C"). (Dkt. 1-1 [hereinafter "Compl."].) On November 3, 2017, Blue Shield removed the case to this Court, citing federal question jurisdiction. (Dkt. 1 [Notice of Removal] ¶ 5.) More specifically, Blue Shield asserted that Plaintiffs' causes of action are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. (*Id*. ¶ 12.) Before the Court is Plaintiff's motion to remand the case to Orange County Superior Court, (Dkt. 17 [hereinafter "Pl. Mot."]), and Defendant Blue Shield's motion to dismiss, (Dkt. 14 [hereinafter "Def. Mot."]).[1] Plaintiff's motion to remand is DENIED and Defendants' motion to dismiss is GRANTED.[2]

## II. BACKGROUND

Plaintiffs are insured under a California Association of Professional Employees Benefit Trust ("CAPE") plan[3], covering both Scott, Karissa, and their son Jake Crosby through Scott Crosby's employment with the County of Los Angeles. (Notice of Removal ¶¶ 10, 14; Compl. ¶ 8.) CAPE is the "contractholder" of the plan, (Notice of Removal at 13), as well as the "plan sponsor," (*id*.). The contract states that it is "a Contract solely between Contractholder and Blue Shield of California," (*id*. at 11), and the plan is elsewhere described as "Contractholder's health plan," (*id*. at 10). Plaintiffs' health plan is not limited to County of Los Angeles employees, as the plan documents define "member" as "a County of Los Angeles employee or California Association of

---

[1] Defendants HAI-C and Magellan have filed a motion for joinder to Blue Shield's motion to dismiss, (Dkt. 15), motion for joinder to Blue Shield's reply to Plaintiffs' opposition, (Dkt. 24), and motion for joinder to Blue Shield's opposition to Plaintiff's motion for remand, (Dkt. 21). The Court GRANTS Defendants' three motions for joinder.

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 29, 2018, at 1:30 p.m. is hereby vacated and off calendar.

[3] Plaintiffs did not provide a copy of their plan with their Complaint. However, Blue Shield has submitted a copy of what they believe is the applicable Plan. (Notice of Removal Exs. 1, 2.) Plaintiffs have not contested this, and refer to the policy attached to Blue Shield's notice of removal approvingly. (Pl. Mot. at 3.)

Professional Employees employee eligible for health benefit offerings through [CAPE]." (*Id*. at 17.) The County of Los Angeles is defined as "employer." (*Id*.)

As the plan sponsor and contractholder, CAPE is responsible for payment of monthly dues for the plan, (*id*. at 21), "may cancel [the] Contract at any time by written notice delivered or mailed to Blue Shield," (*id*. at 25), and is "solely responsible for the distribution of the [summary of benefits and coverage] for each benefit plan offered," (*id*. at 29). The plan also specifies that "[i]f the Contractholder's Plan is governed by ERISA . . ., it is understood that Blue Shield is not the plan administrator for the purposes of ERISA. The plan administrator is the Contractholder." (*Id*. at 28.) Plaintiffs allege that Blue Shield contracts with a mental health services administrator, Magellan and HAI-C, to administer benefits. (Compl. ¶ 11.)

Jake, Scott and Karissa Crosby's minor son, is autistic and has received and continues to receive Applied Behavior Analysis ("ABA") therapy from Autism Spectrum Consultants ("ASC"), which is a provider that is contracted (or "in network") with Blue Shield, Magellan, and HAI-C. (*Id*. ¶¶ 8–10.) Plaintiffs allege that Blue Shield is mandated to cover ABA by California law. (*Id*. ¶ 9.) Plaintiffs allege that in April 2017, Blue Shield sent them letters stating that coverage for ABA had been denied as not medically necessary. (*Id*. ¶ 12.) Magellan and HAI-C had initially determined that ABA therapy should be denied, and Blue Shield upheld their decision. (*Id*.) ASC then required Plaintiffs to contractually agree to pay for ABA to ensure that Jake continued to receive ABA therapy. (*Id*.) As a result of Blue Shield's denial of coverage, Plaintiffs "were forced to eliminate several ABA hours, and try to provide for some of [Jake's] care themselves." (*Id*.) After Blue Shield upheld Magellan and HAI-C's decision, Plaintiffs sought an Independent Medical Review ("IMR") through Blue Shield's regulator, the California Department of Managed Health Care ("DMHC"). (*Id*. at ¶ 13.F). As a result

of the IMR, the DMHC reversed Blue Shield's decision and ordered Blue Shield to authorize coverage for Jake's ABA treatment. (*Id*.)

Plaintiffs bring four causes of action: (1) breach of the covenant of good faith and fair dealing, (2) intentional interference with contractual relations, (3) violations of Business and Professions Code Sections 17200, *et seq*., and (4) negligence. (*Id*. ¶¶ 14–36.) Plaintiffs seek "[d]amages for delay and denial of Blue Shield Policy benefits," consequential damages, damages for mental and emotional distress, punitive damages, injunctive relief, restitution, and attorneys' fees and costs. (Prayer for Relief ¶¶ 1–17.) Plaintiffs are not seeking payment of plan benefits, "as the plan benefits were paid by order of the [DMHC] prior to this lawsuit." (Pl. Mot. at 5; Compl. ¶ 13F.)

## III. LEGAL STANDARD

### A. Motion to Remand

A defendant may remove a civil action filed in state court to a federal district court if the federal court may exercise original jurisdiction over the action. 28 U.S.C. § 1441(b). A federal court can assert subject matter jurisdiction over cases that (1) involve questions arising under federal law or (2) are between diverse parties and involve an amount in controversy that exceeds $75,000. 28 U.S.C. §§ 1331, 1332. A cause of action arises under federal law only when a federal question appears on the face of the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). The defendant removing the action to federal court bears the burden of establishing that the district court has subject matter jurisdiction over the action, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). If it appears that the district court lacks

subject matter jurisdiction at any time prior to the entry of final judgment, the district court must remand the action to state court. 28 U.S.C. § 1447(c).

**B. Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**IV. DISCUSSION**

The two substantive motions require the Court to resolve the related issue of whether the Plaintiffs' plan is governed by ERISA, which would then confer federal question jurisdiction, but may preempt some or all of Plaintiffs' asserted state law claims. For the reasons stated below, the Court finds that the plan at issue is governed by ERISA and Plaintiffs' four state law claims are preempted.

### A. Plaintiffs' Plan is an ERISA Plan

Common law claims filed in state court that are preempted by ERISA are subject to removal to federal court under the well-pleaded complaint rule. *Metropolitan Life Ins. Co.*, 481 U.S. at 67. This is because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provision of [ERISA] removable to federal court." *Id*. at 66. Plaintiffs move to remand this case and argue that the Court lacks federal question jurisdiction to hear this suit because their plan is not an ERISA plan. (Pl. Mot.) Plaintiffs assert that their plan "is through Scott Crosby's employment as a fire fighter for the County of Los Angeles" and the plan "covers only governmental employees working for the County of Los Angeles." (*Id*. at 3.) The parties do not dispute that Plaintiffs' plan is an employee benefit plan. Defendants argue that the plan is neither created nor maintained by the County, thus it is not a governmental plan. (Opp. at 5–8.) The Court agrees.

"ERISA was enacted to protect, *inter alia,* 'the interests of participants in employee benefit plans and their beneficiaries.'" *Silvern v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423, 425 (9th Cir. 1989) (*quoting* 29 U.S.C. § 1001(b)). "In order to provide the widest possible protection to all such plans, ERISA contains a preemption clause which states, in relevant part, that 'this chapter shall supersede any and all State laws insofar as they ... relate to any employee benefit plan . . ..'" *Id.* (*quoting* 29 U.S.C. § 1144(a)). This preemption clause is to be construed broadly. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987).

While ERISA generally governs employee group health plans, ERISA does "not apply to any employee benefit plan if . . . such plan is a governmental plan[.]" 29 U.S.C. § 1003(b)(1). "The term 'governmental plan' means a plan established or maintained for its employees by the" government. 29 U.S.C. § 1002(32); *see also* 29 U.S.C. § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"). "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). The parties dispute whether Plaintiffs' plan is a governmental plan.

Plaintiffs' plan was not created by the County of Los Angeles. Rather, Plaintiff's plan was created by CAPE. CAPE is identified as the "contractholder" and the plan contract is "a Contract solely between Contractholder and Blue Shield." (Notice of Removal at 11, 13.) There is no evidence that the County played a direct role in the plan's creation. "Where unions of public employees enter insurance agreements that are not a result of collective bargaining, the plans may be found to be non-governmental." *Wilson v. Provident Life & Acc. Ins. Co.*, 101 F. Supp. 3d 1038, 1044 (W.D. Wash. 2015)

(holding the plan was a non-governmental plan where the plan was a result of separate negotiation between the contractholder and the provider, the government "merely elected to participate in the Plan"); *see Peterson v. Am. Fidelity Assurance Co.*, 2013 WL 6047183, at * 4 (D. Nev. Nov. 13, 2013) (holding the plan was a non-governmental plan in part because the government entity "did not make any contributions to the Plan and the Plan was not required under any collective bargaining agreement"). Plaintiffs' plan membership is not limited to employees of the County of Los Angeles, but includes CAPE's own employees. *See Wilson*, 101 F. Supp. 3d at 1044 (noting the plan covered the union's employee "who presumably also made contributions"). CAPE is responsible for dues payments, and government funding of the plan does not transform it into a government plan. *Id*. (holding the plan was an ERISA plan despite the fact the plan received public funding); *Hariri v. Reliance Standard Life Ins. Co.*, No. 5:15-CV-03054-EJD, 2017 WL 3422029, at *4 (N.D. Cal. Aug. 9, 2017) (noting that *Wilson* rejected the argument that "public funding alone transformed" a plan into a "governmental plan). All of these plan characteristics indicate Plaintiffs' plan is not a government plan, and Plaintiff has provided no evidence to find otherwise.

Neither does the County's involvement in the plan rise to the level of the County "maintaining" the plan. Rather, CAPE maintains the plan. There is no evidence that the County engages in any claims administration or communicates with members about plan coverage. The plan administrator is CAPE. (Notice of Removal at 28.) Defendants make benefits determinations and communicate those decisions to members. (Compl. ¶ 12.) CAPE is "solely responsible for the distribution of the [summary benefits and coverage] for each benefit plan offered." Thus, there is no evidence that Plaintiffs' plan is maintained by the County. *Compare Peterson*, 2013 WL 6047183, at *4 (holding that the government did not "maintain" the plan even though it offered payroll deductions as a mechanism to pay dues and allowed the insurance company access to salary information and physical space) *with Hariri*, 2017 WL 3422029 at *5 (holding that the while the

County did not "create" the plan, the County "maintained" the plaintiff's plan where the plaintiff "presented evidence showing that the County continued to perform, without any interruption, all of the day-to-day administrative and claims processing activities," "received and distributed most of the [policy] certificates through its HR Department," "posted the [policy] certificate on the County's website," and "provided claim assistance and claim forms").

Plaintiff's motion merely offers the fact that Scott Crosby is a County employee and the plan has County employee membership as evidence that the County "created or maintains" the plan. (*See generally* Pl. Mot.) In reply, Plaintiffs argue that their plan only covers government employees working for the County of Los Angeles, (Dkt. 22 at 3), but this argument is belied by the terms of the plan itself, which Plaintiffs do not contest.[4]

The Court finds insufficient evidence to support the finding that the Plaintiffs' plan may be considered "established" or "maintained" by a government entity. Accordingly, Plaintiffs' plan is not a governmental plan. Plaintiff's plan is covered by ERISA and this Court has federal question jurisdiction over the Complaint. Thus, Plaintiff's motion to remand is DENIED.

//
//
//
//

---

[4] Plaintiffs argue that the plan does not state it is an ERISA policy or advise of ERISA rights, which Plaintiffs assert "is necessary for an ERISA policy." (*Id*.) Plaintiffs also argue that Defendants have "failed to show any required IRS reports for the Plan . . . [as] required for an ERISA Plan." (Dkt. 22 at 3.) Plaintiffs provide no legal support for why these characteristics are required for the Court to find their plan is covered by ERISA. In any event, Plaintiffs' plan includes a "Statement of ERISA Rights." (Notice of Removal at 91–93.)

## B. Plaintiffs' claims are preempted by ERISA

Defendants move to dismiss Plaintiffs' claims as preempted by ERISA. "There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in 29 U.S.C. § 1132(a) [ERISA § 502], notwithstanding the lack of express preemption." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009). ERISA § 514(a), 29 U.S.C. § 1155(a), expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." A law relates to an employee benefit plan if it has a "connection with" or "reference to" a plan. *Paulson*, 559 F.3d at 1082 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Even where § 514(a) preemption does not exist, a state law claim may be superseded under § 502(a), 29 U.S.C. § 1132, which creates "a comprehensive civil enforcement scheme" for ERISA. *Pilot Life Ins. Co.*, 481 U.S. at 54. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Both of these provisions "defeat state-law causes of action on the merits." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011).

All of Plaintiffs' causes of action against Defendants are preempted by ERISA under § 514(a).[5] In determining whether there is "a connection" between a law and an employee benefit plan for purposes of § 514(a) preemption, a court must look "both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA

---

[5] Plaintiffs do not address § 514(a) preemption in their briefing, but rather solely address § 502(a) preemption. (*See generally* Pl. Mot.; Dkts. 19 [Plaintiffs' Opposition to Def. Mot.], 22 [Plaintiffs' Reply to Pl. Mot.].)

plans." *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) (internal quotation marks and citations omitted). The Ninth Circuit has employed a "relationship test," emphasizing "the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004); *Paulsen,* 559 F.3d at 1082–1083. "ERISA preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan." *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998), *as amended* (Aug. 3, 1998) (citing *Pilot Life,* 481 U.S. at 57); *see Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993) (holding that the plaintiff's wrongful death claim based on the insurer's improper withdrawal of authorization for the decedent's procedure causing his death was preempted as a "state common law cause of action seek[ing] damages for the negligent administration of benefit claims"). Similarly, the Ninth Circuit has held "that state law tort and contract claims as well as violations of a state insurance statute are preempted by ERISA." *Bast*, 150 F.3d at 1007 (citation omitted).

Plaintiffs' causes of action arise out of Blue Shield's delayed payment of allegedly medically necessary ABA therapy for Jake Crosby. Plaintiffs' claims for breach of the covenant of good faith and fair dealing, intentional interference with contractual relations,[6] violations of Business and Professions Code Sections 17200, *et seq.*, and negligence will require the Court to interpret and enforce the terms of Plaintiffs' plan, and decide whether Blue Shield improperly denied coverage of ABA therapy. Thus, Plaintiffs' claims "relate to" the administration and enforcement of the plan, and are

---

[6] Plaintiffs argue that their intentional interference with contractual relations claim is "independent and the terms of an ERISA-governed plan are not implicated." (Dkt. 22 at 6.) However, like in *Tingey*, while this claim concerns Plaintiffs' relationship with a third party, ASC, it "spring[s] from the handling and disposition of [Plaintiffs'] medical benefits insurance claim and thus are subject to preemption." *Tingey*, 953 F.2d at 1131.

preempted by § 514(a). *See, e.g., Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (holding counterclaim for tortious breach of the covenant of good faith and fair dealing was preempted under § 514(a)); *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1131 (9th Cir. 1992) (holding plaintiffs' causes of action for intentional interference with a contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and violations of the Arizona Insurance Code were preempted by ERISA).

Plaintiffs attempt to distinguish their claims from *Bast* to argue that their "claims herein remain whether or not Defendants paid Plaintiffs' claims." (Dkt. 22. At 6.) However, the Ninth Circuit's reasoning in *Bast* plainly applies to the facts of this case. As in *Bast*, the harm Plaintiffs allegedly suffered arose from the insurer's failure to timely pay the benefit at issue. *Bast*, 150 F.3d at 1007. Unlike the plaintiff in *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001), who sought damages for invasion of privacy based on the insurer's conduct during claim investigation, Plaintiffs' claims depend on the payment of benefits. The *Dishman* plaintiff allegedly suffered damages from conduct independent of whether or not he received his requested benefit. Plaintiffs' claims arose because of Blue Shield's initial denial of ABA therapy for Jake Crosby. The harm Plaintiffs' suffered was inextricably intertwined with Blue Shield's decision not to pay.

Accordingly, § 514(a) bars Plaintiffs' state law claims.[7] The Court GRANTS Defendants' motion to dismiss Plaintiffs' Complaint.

---

[7] In support of their motion, Plaintiffs cite two cases, but the claims at issue in those cases were truly unrelated to the administration of ERISA plan benefits. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001) (plaintiff's claim that the insurer tortuously invaded his privacy during claim investigation had "only a peripheral impact on daily plan administration," thus the claim lacked "enough of a relationship to warrant preemption"); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 948 (9th Cir. 2009) (the plaintiff hospital's claim for money owed under an oral contract and the defendant "did not stem from the ERISA plan" and thus was not preempted).

## C. Leave to Amend

Plaintiffs request leave to amend so that Plaintiffs can "enforce their rights under the ERISA Plan." (Dkt. 19 at 5–6.) Defendants argue that Plaintiff seek only extracontractual damages that are unavailable under ERISA.

"Section 502(a) of ERISA provides, among other things, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . .."" *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005) (citing 29 U.S.C. § 1132(a)). Plaintiffs admit that they have received all benefits due under their contract. "Extracontractual, compensatory and punitive damages are not available under ERISA." *Bast*, 150 F.3d at 1009 (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985); *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir. 1986) (holding that ERISA § 502(a)(3) does not allow for extracontractual damages, including damages for emotional distress)). Plaintiffs' claims are for "[d]amages for delay and denial of Blue Shield Policy benefits," consequential damages, damages for mental and emotional distress, punitive damages, injunctive relief, restitution, and attorneys' fees and costs. "These claims all seek extracontractual or compensatory damages which are not recoverable under ERISA. Thus, for these claims, ERISA provides no remedy." *Id*. The Court therefore DENIES Plaintiffs leave to amend on their claims for extracontractual damages.

Plaintiffs argue that ERISA provides Plaintiffs "the ability to clarify rights to future benefits under the ERISA Plan," (Dkt. 19 at 6), and they allege that Defendants continue to preclude ABA benefits that are medically necessary, (*id*.; Compl. ¶¶ 9–10, 30). Plaintiffs also argue that they can state a claim for an ERISA violation based on Defendants' failure to provide copies of records and documents utilized by Defendants in making decision not to authorize ABA, (Compl. ¶ 27E), which allegedly violates 29 CFR

2560.503-1 (F)(i), (Dkt. 19 at 6). Based on these two allegations, Plaintiff seeks injunctive relief. (Prayer for Relief ¶ 12.) Defendants do not address whether Plaintiffs' proposed amendments are futile in their reply. (*See generally* Dkt. 23.) ERISA section 502(a) provides: "A civil action may be brought by a participant or a beneficiary to . . . enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 502(a)(3) authorizes an individual to institute a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

Plaintiffs may be able to state a viable claim under this theory, and Defendants have not argued otherwise. Because "leave to amend should be granted with extreme liberality," *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (quotation omitted), the Court **GRANTS** Plaintiffs FOURTEEN DAYS' LEAVE TO AMEND to amend their Complaint as to these two claims.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is DENIED and Defendants' motion to dismiss is GRANTED. Plaintiffs are given FOURTEEN DAYS' LEAVE TO AMEND to file a First Amended Complaint for relief regarding their rights under the plan and to enforce the terms of the plan. Plaintiffs would be well advised not to reiterate claims the Court has dismissed.

DATED: January 23, 2018

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE