RANDY D. CURRY, ESQ., SBN 119636
randydcurrylaw@gmail.com
**LAW OFFICES OF RANDY D. CURRY**
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 2584381 Fax: (949) 258-4382

ANDREW S. FRIEDMAN (*admitted pro hac vice*)
afriedman@bffb.com
KIMBERLY C. PAGE (*admitted pro hac vice*)
kpage@bffb.com
**BONNETT FAIRBOURN FRIEDMAN
& BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

*Attorneys for Plaintiffs and the Proposed Class*

CINDY MEKARI RUCKER (SBN 272465)
cmekari@maynardcooper.com
**MAYNARD, COOPER & GALE, LLP**
1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA 90067
Telephone: (213) 218-7890

LEE E. BAINS, JR.
THOMAS J. BUTLER
JOHN DAVID COLLINS
(admitted *pro hac vice*)
lbains@maynardcooper.com
tbutler@maynardcooper.com
jcollins@maynardcooper.com
**MAYNARD, COOPER & GALE, PC**
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
Telephone: (205) 254-1000

*Attorneys for Defendants Magellan Health, Inc. and
Human Affairs International of California*

JOINT RULE 26(f) REPORT

GREGORY N. PIMSTONE (SBN 150203)
LUKE L. PUNNAKANTA (SBN 293488)
gpimstone@manatt.com
lpunnakanta@manatt.com
**MANATT, PHELPS, & PHILLIPS, LLP**
11355 West Olympic Boulevard
Los Angeles, CA 90064
Telephone: (310) 312-4000

JOSEPH E. LASKA (SBN 221055)
jlaska@manatt.com
**MANATT, PHELPS, & PHILLIPS, LLP**
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400

*Attorneys for Defendant California Physicians' Service*
*d/b/a Blue Shield of California*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT CROSBY and KARISSA CROSBY, individually, and on behalf of their son JAKE CROSBY,<br><br>And on behalf of all others similarly situated.<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; MAGELLAN HEALTH, INC.; and HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA,<br>Defendants. | Case No. 8:17-CV-01970-CJC-JDE<br><br>CLASS ACTION<br><br>**JOINT RULE 26(f) REPORT** |

On June 15, 2018, Plaintiffs and Defendants, by and through their respective counsel of record, conferred and discussed the issues addressed in Federal Rules of Civil Procedure 16(b) and 26(f) and Local Rule 26-1 and hereby respectfully submit the following Joint Rule 26(f) Report.

## I.   NATURE AND BASIS OF CLAIMS AND DEFENSES

### A.   Plaintiffs' Statement:

The number of children in the United States suffering from autism spectrum disorder ("ASD") is steadily increasing. Providing access to proven treatment designed to arm both autistic children and their care-givers with the tools to deal with the challenges associated with ASD is essential.  Applied Behavior Analysis ("ABA") therapy was developed in the 1970s and is the generally-accepted and scientifically-proven treatment for ASD that uses behavioral techniques to teach autistic children basic and complex skills that they would not otherwise be able to accomplish. ABA works by reinforcing appropriate behavior while decreasing or eliminating challenging behavior. By its nature, ABA therapy builds upon prior therapy sessions and requires continuity in treatment to be fully effective. Studies have shown that early and intensive ABA therapy result in increased cognitive functioning and adaptive behaviors in autistic children and increased instances of autistic children interacting with their peers and integrating into mainstream society.

Plaintiffs Scott and Karissa Crosby are the parents and legal guardians of their minor child, Jake Crosby, who, around the age of three, was diagnosed with ASD. Plaintiffs have brought this class action alleging that Defendants breached their fiduciary duties under ERISA by (1) utilizing medical necessity criteria and claims determination guidelines that are far more restrictive than those generally accepted in established medical practice when reviewing requests for ABA therapy;

1  (2) applying these restrictive level-of-care and coverage determination guidelines

2  to claims submitted by Plaintiffs and the other Class members requesting ABA

3  therapy; and (3) refusing to provide a meaningful appeal process, thereby avoiding

4  their obligations to provide continued coverage during the internal appeal process.

5  Like the Class members they seek to represent, Plaintiffs have been harmed

6  by Defendants' unlawful policies. Plaintiffs are participants under a California

7  Association of Professional Employees Benefit Trust plan (the "Plan"), a fully-

8  insured plan issued by Defendant Blue Shield of California ("BSC"). Defendants

9  Magellan Health, Inc. and Human Affairs International of California (collectively

10  referred to as "Magellan") serve as the Mental Health Services Administrator under

11  the Plan.

12  As part of Jake's treatment plan, his mental healthcare provider

13  recommended implementation of ABA therapy. Jake has been receiving ABA

14  therapy since 2009.  Under the Plan, Defendants approve treatment plans involving

15  ABA therapy in six-month increments. In October 2016, Plaintiffs requested 150.5

16  hours per month of medically necessary ABA therapy for Jake.  In response,

17  Magellan arbitrarily reduced the number of requested hours of ABA therapy to

18  120.4 hours per month.  BSC perfunctorily denied Plaintiffs' appeal and upheld the

19  reduction in requested benefits.  Plaintiffs sought independent review with the

20  Department of Managed Health Care ("DMHC"). In March 2017, the DMHC

21  reversed the Defendants' denial of treatment, concluding that "[g]iven the medical

22  necessity of ABA therapy for children with autism, coupled with the patient's

23  maladaptive    behaviors    that    include    elopement,    aggression    and

24  stereotyped/repetitive behaviors, the request for 150.5 hours per month of ABA is

25  medically necessary for treatment of the patient's autism."

26  Plaintiffs were forced once again to seek independent review with the DMHC

27  in May 2017 and yet again in December 2017 after Magellan imposed even more

28

2

JOINT RULE 26(f) REPORT

severe reductions to the hours of approved ABA therapy for Jake and BSC rubber-stamped the reduced benefits on appeal.   On both occasions, DMHC reversed Defendants' denial of benefits finding the full complement of ABA therapy requested by Plaintiffs "were and are medically necessary."

Because of Defendants' improper denial of benefits, Jake's ABA therapy provider required Plaintiffs to contractually agree to pay for all ABA therapy provided to Jake. Unable to pay for all of Jake's ABA therapy after Defendants' repeated denials and prior to the reversals by DMHC, Plaintiffs were forced to curtail ABA hours, and to provide for some of Jake's care themselves.

Plaintiffs assert claims under ERISA for breach of fiduciary obligations under 29 U.S.C. § 1132(a)(1)(B) to clarify Plaintiffs' and Class members' rights to future benefits and to enforce their rights under ERISA as a result of Defendants' persistent utilization of improper or otherwise unlawful guidelines, policies and procedures to deny coverage for ABA therapy.  Through this action, Plaintiffs seek appropriate equitable and injunctive relief under ERISA to compel Defendants to change their policies and practices so as to comply with their fiduciary obligations and federal law and to reprocess and redetermine requests for ABA that were previously denied.

## B.   Defendants' Statement:

Defendants dispute Plaintiffs' characterization of the benefit determinations at issue, and further dispute the material allegations in the Complaint. Defendants additionally dispute that Plaintiffs are entitled to the relief sought, or any relief whatsoever.

Plaintiffs Scott Crosby and Karissa Crosby are participants in the Group Health Service Contract (the "Plan") entered into between Blue Shield and California Association of Professional Employees Benefit Trust ("CAPE"). Jake,

their minor son, is a participant in the Plan as an insured dependent beneficiary. The Plan is an ERISA-governed health plan and provides coverage for certain mental health services. HAI-CA serves as mental health services administrator for Blue Shield under the Plan and, in that capacity, administers request for mental health services from eligible members and dependents of the Plan. Contrary to Plaintiffs' allegations above, Magellan Health, Inc. is not the mental health services administrator under the Plan and therefore not a proper-party to this lawsuit.

Plaintiffs' son, Jake, sought coverage for continued Applied Behavioral Analysis ("ABA") therapy for certain six-month time frames beginning in October 2016, April 2017, October 2017, and April 2018. Jake's requests for direct 1:1 ABA services during these time frames were partially denied on initial review; however, each of these determinations was subsequently overturned and the requests for direct 1:1 ABA services were ultimately approved *and paid* in full.

Defendants further state that the guidelines applied were clinically appropriate and complied with the terms of the Plan. Moreover, Defendants state that the guidelines were correctly applied in adjudicating the direct 1:1 ABA therapy in question. In addition, the ERISA-governed Plan at issue expressly grants Defendants discretionary authority to construe the terms of the Plan and determine eligibility for benefits under the Plan.

## II.    COMPLEXITY OF THE CASE

In accordance with Local Rule 26-1 counsel for the parties have discussed the complexity of this case and agree that, to the extent the Manual for Complex Litigation may be useful for the management of this action, they will consult the Manual to assess whether specified procedures should be utilized as the case progresses.

## III.   ADDITIONAL PARTIES AND CLAIMS

### A.   Plaintiffs' Statement:

Plaintiffs do not anticipate seeking to join additional Defendants but reserve the right to name additional Plaintiffs and/or proposed class representatives based on discovery conducted in the case or future rulings by the Court.  Plaintiffs do not at this time anticipate asserting additional claims.

### B.   Defendants' Statement:

Defendants have not asserted any claims, and at this time they do not anticipate adding any additional parties, claims, or defendants, but discovery is ongoing.

## IV.   ANTICIPATED MOTIONS

### A.   Plaintiffs' Statement:

Plaintiffs intend to file a motion for class certification at the earliest date practicable. Plaintiffs anticipate seeking class certification under Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (b)(3).  Accordingly, Plaintiffs' motion for class certification will or may address the following issues to be decided by the Court:

(i)     Whether members of the Class are so numerous that joinder of all members is impractical;

(ii)    Whether there exist issues of fact and law common to all members of the Class;

(iii)   Whether Plaintiffs' claims are typical of the claims of the Class;

(iv)    Whether Plaintiffs will fairly and adequately protect the interests of the members of the Class; and

(v)    Whether prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants; or

(vi)    Whether by applying a uniform medical policy of arbitrarily reducing or denying ABA therapy, Defendants have acted and refused to act on grounds that apply generally to the Class;

(vii)    Whether by systematically denying appeals, imposing delays in processing claims, and forcing Plaintiffs and Class members to seek relief from the DMHC, Defendants have acted and refused to act on grounds that apply generally to the Class;

(viii)    Whether common questions of law and fact predominate and whether a class action is superior to other available methods for the fair and efficient resolution of Plaintiffs' and Class member claims;

(ix)    Whether the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards for Defendants; and

(x)    Whether Defendants have acted and refused to act on grounds that apply generally to the Class such that injunctive relief is appropriate.

Plaintiffs may offer expert testimony in connection with their motion for class certification and/or in trial of their claims.

**B.    Defendants' Statement:**

Defendants deny that class certification is appropriate for a number of reasons.

Defendants also anticipate filing dispositive motions regarding Plaintiffs' individual claims and, if necessary, any putative class claims based on a number of defenses including, but not limited to, Plaintiffs' lack of standing.

# V.    DISCOVERY PLAN

## A.    Rule 26(a)(1) Initial Disclosures

The parties agree to exchange initial disclosures on July 20, 2018.

## B.    Subjects for Discovery

The parties do not presently agree on all subjects for discovery but will continue to meet and confer as discovery progresses.

### 1.    Plaintiffs' Statement:

#### a.    *Scope of Discovery.*[1]

This case does not present a simple "denial of benefits" claim where discovery may be limited to the administrative record. Rather, Plaintiffs on behalf of themselves and the putative class are challenging: (1) the standardized guidelines, policies and procedures utilized by Defendants when evaluating requests for ABA therapy for treatment of ASD; and (2) the policies and procedures implemented to deny meaningful review of adverse benefit determinations concerning requests for ABA therapy, which systematically deny participants and beneficiaries access to treatment allowed under BSC's plans unless such participants and beneficiaries seek independent review before the DMHC. Plaintiffs contend that Defendants' actions in adopting and utilizing these unlawful guidelines, policies and practices breach their fiduciary duties under ERISA. Resolution of Plaintiffs' individual and class claims does not depend on the individual circumstances of any putative Class member, but turns instead on whether Defendants' medical necessity and coverage determination guidelines,

---

[1] Plaintiffs address Defendants' attempts to limit the scope of discovery through implementation of separate discovery phases under Section V.F.2. concerning the "Sequencing of Discovery."

1   policies and procedures are more restrictive than those generally accepted in

2   medical practice when reviewing requests for ABA.

3        Since this is not a "denial of benefits" case as Defendants claim but is rather

4   an action alleging systematic breaches of fiduciary obligations and seeking

5   injunctive and other equitable relief, discovery is not limited to the administrative

6   record. *See, e.g.*, *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*,

7   262 F. Supp. 3d 917, 920 (D. Ariz. 2016) (allowing discovery in individual action

8   under 29 U.S.C. § 1132(a)(1)(B) relating to employee and consultant financial

9   incentives to deny claim; approval and termination rates of similar benefit claims;

10  contractual arrangements between plan and third parties; policies, procedures and

11  guidelines used to evaluate and process the type of claim at issue; matters generated,

12  submitted or considered that were not in the administrative record; and other

13  evidence of conflict or bias affecting the challenged decision).

14       Moreover, Plaintiffs assert claims on behalf of a putative class of Plan

15  participants and beneficiaries. Defendants' proposal to limit discovery to the

16  administrative record, if accepted by the Court, would effectively thwart Plaintiffs'

17  ability to develop a full record establishing the requirements for class certification.

18  This artificial limitation conflicts with established Supreme Court precedent and

19  would unfairly prejudice Plaintiffs and the putative class. *See, e.g.*, *Wal-Mart, Inc.*

20  *v. Dukes*, 564 U.S. 338, 351 (2011) (allowing pre-certification discovery to

21  establish the record necessary for the court to conduct a "rigorous analysis" to

22  determine whether the requirements for a class action suit have been met); *Johnson*

23  *v. Flakeboard Am. Ltd.*, No. CA 4:11-2607-TLW-KDW, 2012 WL 2237004, at *6

24  (D.S.C. Mar. 26, 2012), *report and recommendation adopted,* No. CIV.A. 4:11-

25  2607-TLW, 2012 WL 2260917 (D.S.C. June 15, 2012) ("The Supreme Court's

26  decision in *Dukes* supports Plaintiffs' contention that discovery into the merits of

27  the claim is necessary before entering findings of fact on whether Rule 23 standards

28

JOINT RULE 26(f) REPORT

have been met."); *In re Fed. \*300 Home Loan Mortgage Corp. (Freddie Mac) Sec. Litig.,* 281 F.R.D. 174, 176 (S.D.N.Y.2012) (explaining that "[a] trial court must receive enough evidence to be satisfied that each Rule 23 requirement has been met").

### b.   Discovery Subjects.

Plaintiffs will serve document requests, third-party subpoenas and other discovery generally seeking information related to the subjects, issues and events referenced in the Second Amended Complaint, including:

o  Jake Crosby's diagnosed ASD, the denial of coverage, and related appeals, including but not limited to the complete claim file;

o  All guidelines, policies, procedures or other information used to determine the medical necessity of any request for ABA therapy, including any evidence, scientific literature or other documents relied on in adopting such guidelines, policies or procedures;

o  Communications between and among BSC and Magellan relating to requests for ABA therapy for treatment of ASD, denials of coverage, and related appeals;

o  Documents exchanged between and among BSC, Magellan, and/or DMHC relating to the external review and reversal of denials of requested ABA therapy by DMHC;

o  Plan Documents, Certificates of Coverage, and Summary Plan Descriptions from 2011 to the present for all insurance plans sponsored, issued or administered by BSC (the "BSC Plans"), including:  Employee Plans, Group Plans and Individual Plans;

o  Agreements between BSC and Magellan in effect at any time from 2011 to the present;

o  ESI or other documents reflecting, among other things, the total number of participants and beneficiaries covered by the BSC Plans for each year from 2011 to the present;

o  Documents concerning the coverage or exclusions applicable to treatment for ASD under the BSC Plans, including ABA therapy;

o  Requests for ABA therapy by participants, beneficiaries or enrollees under the BSC Plans at any time from 2011 to the present, including but not limited to the claim forms, documents and communications relating to the disposition of the request and disposition of any internal appeals from the denial of request for ABA therapy;

9

o   Documents relating to any external review by DMHC of the denial or reduction in hours under the BSC Plans of a request for ABA therapy at any time from 2011 to the present, including but not limited to the outcome of DMHC's review;

o   Documents provided to participants, beneficiaries or enrollees, including all documents distributed to enrollees in the BSC Plans that describe, explain or discuss coverage for treatment designed to treat ASD and/or coverage of ABA therapy;

o   Documents provided to, or created by or for, employees or agents of Defendants that describe, explain, or otherwise relate to any policies, procedures, practices or guidelines concerning requests for ABA therapy and appeals from the denial of requested ABA therapy, including but not limited to training manuals, policy manuals, information sheets, internal memoranda, meeting minutes, policy positions, committee reviews, notes, correspondence, implementation plans, any research, reports, analyses, studies and/or commercial or third-party medical necessity guidelines Defendants' reviewed or relied on;

o   Documents, communications, actuarial material, or other financial projections or analyses, relating to the cost or financial impact of providing coverage for ABA therapy for participants, beneficiaries, or enrollees of any BSC Plan, including but not limited to supporting worksheets, assumptions, data, research, or any other information relied on in calculating the cost, projected or actual, of providing coverage for ABA therapy; and

o   Documents relating to whether to include ABA therapy as a covered benefit under any BSC Plan from 2011 to the present.

Plaintiffs believe that the foregoing documents and information are all within the actual or constructive custody or control of Defendants and, given their importance to the central issues in this case, that the production of these documents is not burdensome and, in any event, is proportional to the needs of this case. Defendants' claim that some of the categories are overreaching is premature. Plaintiffs have not served their discovery requests, received any discovery or engaged in the meet and confer process. It is possible that during the meet and confer process, the parties may reach an agreement to generate a sampling of relevant plan provisions or relevant claims data. *See Wit v. United Behavioral Health*, Case No. 14-cv-2346-JCS (N.D. Cal.) (Joint Case Management Statement

setting forth a procedure for sampling relevant plans and relevant claims data) (Doc. No. 93).

### 2.    Defendants' Statement:

*<u>Scope</u>*

While Defendants disagree with many of Plaintiffs' arguments, Defendants believe these issues are better decided in briefing rather than in the context of a Joint Rule 26(f) statement. Defendants briefly set forth their position below.

Defendants believe that discovery in this ERISA class action will require close management by the Court, for at least two reasons.

First, the Court's review of the merits will generally be limited to the administrative record that was before the administrator at the time of its decisions. Only limited discovery, if any, should be allowed. *Groom v. The Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1206 (C.D. Cal. 2007) (discovery in an ERISA case "must be narrowly tailored and cannot be a fishing expedition"). This holds true in ERISA class actions. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004).

Second, while a bright-line distinction between class and merits discovery is not always workable, Defendants believe that certain categories of potentially burdensome discovery sought by Plaintiffs can and should be deferred unless and until the Court certifies a class.

Defendants' position on phasing of discovery is addressed, *supra*, in Section V.F.1.

### C.    Electronically Stored Information

The parties are in the process of drafting an agreed-upon electronic discovery protocol that will govern the collection of discoverable electronically stored information and the production format for such information.  The parties will jointly

request the Court to resolve any differences if they are unable to reach agreement on all terms of the ESI discovery protocol.

### D. Claims of Privilege or Protection

Unless extended by agreement or court order, the parties will serve privilege logs within one week of each production of documents responsive to discovery requests consistent with Federal Rule of Civil Procedure 26(b)(5). The parties will meet and confer to resolve any disputed claims of privilege or work product protection, as required by the Fed. R. Civ. P. and the Local Rules, before engaging in motion practice.

The parties' proposed Protective Order referenced below contains a provision addressing inadvertent disclosure of privileged or protected information.

### E. Limitations on Discovery

The parties agree that no modification of the presumptive limits on the number of depositions or the number of interrogatories is necessary at this time. However, the parties reserve their respective rights to seek modification of the presumptive limitations on discovery by agreement or order of the Court, and further reserve all rights to object to the opposing parties' requested modifications.

### F. Sequencing of Discovery

#### 1. Defendants' Statement:

***Phasing of Discovery***

Defendants believe that discovery should proceed in three phases. The first phase ("Phase One") shall be limited to discovery on issues relating to the merits of Plaintiffs' individual claims and shall include any dispositive motions relating to Plaintiffs' individual claims. The second phase ("Phase Two") shall be limited to discovery on class certification, any *Daubert* motions directed to experts designated

on class certification issues, and Plaintiffs' motion for class certification and briefing and argument thereon. Subject to the Court's decision on the foregoing issues, discovery shall then proceed on issues relating to the merits of putative class claims ("Phase Three").

Prioritizing discovery into the merits of Plaintiffs' individual claims ("Phase One") before conducting class certification and class expert discovery ("Phase Two") would streamline litigation and serve the interests of judicial economy by preventing potentially needless discovery on class issues in the event Plaintiffs' individual claims are dismissed. *See Romanchuk v. Board of Trustees of the S. California United Food & Commercial Workers' Joint Pension Tr. Fund*, CV 15-08180-AB(KS), ECF No. 21 (C.D. Cal. Feb. 8, 2016) (Order dividing up discovery into phases, with phase one involving issues concerning the merits of individual claims and dispositive motions on same, and subsequent phase (if plaintiffs prevailed on summary judgment) involving class certification, class damages, and other class remedies). Such streamlining is of paramount importance in cases involving ERISA preempted claims. Contrary to Plaintiffs' contentions, the unencumbered, wide-open discovery sought contravenes, rather than advances, ERISA's purpose. On the other hand, staging discovery in the manner proposed by Defendants advances ERISA's overarching and fundamental tenets which require cost-effective and streamline resolution of employee benefit disputes. *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010). Preventing potentially needless class-wide discovery at the preliminary stage of litigation, and before class certification is determined, is in keeping with ERISA's underlying tenets and facilitates the expeditious and inexpensive resolution Congress intended under ERISA's remedial scheme. This is especially true given the irrelevancy of a number of Plaintiffs' proposed discovery topics, and the undue burden and expense that would result if discovery on these topics proceeded before a class is certified.

Defendants maintain that there is a risk of potentially needless class discovery in the instant case. Because Plaintiffs' benefit claims were ultimately approved and awarded, the merit of their individual claims will be subject to legitimate challenge on summary judgment. In this regard, the suitability of Plaintiffs to serve as named class representatives in this matter is questionable.

The threat of wasteful discovery (and discovery disputes) is particularly high here in light of Plaintiffs' bullet-point list of anticipated discovery above. For example, the fourth topic includes every plan-related document for every Blue Shield plan, apparently without regard to whether the member would be part of the proposed ERISA class or could possibly have been subject to the conduct alleged in the Complaint. The eighth subject seeks full-blown discovery on every ABA claim since 2011, without regard to whether the claim was even denied. Again, all of this facially overbroad discovery is being sought by *a single member who has admittedly received all benefits due under his ERISA plan*.

Prioritizing class certification discovery and *Daubert* motions on class certification experts ("Phase Two") before conducting merits discovery on the putative class ("Phase Three") avoids the potentially needless expense of full-blown merits discovery on a class and/or claims that may not be certified. In furtherance of this principle, courts routinely divide the stages of discovery in a purported class action and limit pre-certification discovery to issues relevant to class certification before proceeding to discovery on the merits of the underlying action. *See, e.g., Dysthe v. Basic Research*, L.L.C., 273 F.R.D. 625, 628 (C.D. Cal. 2011) *(*"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: e.g., the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class. In keeping with the nature of class action suits, 'class members and parties are not treated identically. Therefore, many courts hold that discovery from putative

JOINT RULE 26(f) REPORT

1    or absent class members may be allowed only in special circumstances.'") (internal

2    citations omitted); *Munro et al., v. Univ. of So. Cal.*, et al., Case No. 2:16-cv-06191-

3    VAP-E, ECF No. 78 (C.D. Cal. Nov. 27, 2017) (scheduling order bifurcating

4    discovery into a class certification phase and a merits phase); *Barnes v. Equinox*

5    *Group*, No. C10-03588 LB, 2011 U.S. Dist. LEXIS 131107 at *1 (N.D. Cal. Nov.

6    14, 2011) ("[C]ourts often bifurcate discovery, as to first determine whether class

7    certification is proper before addressing the merits of the dispute. . . However, as

8    the commentary to Rule 23 states, 'discovery in the aid of the certification decision

9    often includes information required to identify the nature of the issues that will

10   actually be presented at trial,' and that, 'in this sense[,] it is appropriate to conduct

11   discovery into the 'merits' limited to those aspects relevant to making the

12   certification decision on an informed basis."); *Babbitt v. Albertson's Inc.*, No. C-

13   92-1883 SBA, 1992 U.S. Dist. LEXIS 19091 at *6 – 7 (N.D. Cal. 1992) (Noting

14   that "[i]n general, at the precertification stage, discovery in a putative class action

15   is limited to certification issues." As a result, discovery unrelated to class

16   certification issues "is usually deferred until it is certain that the case will be allowed

17   to proceed as a class action."); *In re ATI Tech. HDCP Litig.*, Case No. 5:06-cv-

18   01303-JW, ECF No. 25 (N.D. Cal. Feb. 11, 2007) (Court ordering that parties "shall

19   limit their discovery to class certification issues. This limitation shall be in effect

20   until the Court's ruling on Plaintiffs' Motion for Class Certification."); *Medlock v.*

21   *Taco Bell Corp.*, 2014 WL 2154437, *1 (E.D. Cal. 2014) ("Discovery in this matter

22   was bifurcated to permit the parties to initially conduct discovery limited to class

23   certification issues and then, after a class had been certified, to conduct discovery

24   regarding the merits of Plaintiffs' claims."); *Mora v. Cal West AG Services, Inc., et*

25   *al.*, Case No. 1:15-cv-01490-LJO-EPG, ECF No. 40 (E.D. Cal. May 18, 2016)

26   (ordering that case would proceed on a bifurcated schedule with class certification

27

28
                                    15

1   and class discovery (including expert disclosures and expert-related discovery)
2   addressed in the first scheduling phase).

3   Commentators have likewise noted the merits of staging discovery in class
4   actions. THE MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004) ("Courts
5   often bifurcate discovery between certification issues and those related to the merits
6   of the allegations. Generally, discovery into certification issues pertains to the
7   requirements of Rule 23 and tests whether the claims and defenses are susceptible
8   to class-wide proof; discovery into the merits pertains to the strength or weakness
9   of the claims or defenses and tests whether they are likely to succeed . . . Discovery
10  relevant only to the merits delays the certification decision and may ultimately be
11  unnecessary."). *See also* 1 McLaughlin on Class Actions § 3:10 (14th ed. 2017)
12  ("Because many putative class actions will not proceed as individual actions if class
13  certification is denied, interests of cost and resource efficiency often support
14  formally deferring full-blown merits discovery until class certification is decided.");
15  William W. Schwartzer et. al, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL §
16  10:740 (The Rutter Group 2008) ("Discovery on the merits of the class claim is
17  usually deferred until it is certain that the case will be allowed to proceed as a class
18  action.").

19  ### ***Expert Discovery***

20  With respect to expert discovery, Defendants' position is that class-
21  certification expert discovery and resolution of *Daubert* motions should occur prior
22  to briefing and hearing on class certification. Defendants believe this is the most
23  efficient way to conduct expert discovery and facilitates full understanding of
24  opposing experts' testimony before briefing class certification issues. This approach
25  is not only practical, it is well-supported. The United States Supreme Court
26  expressed "doubt" as to whether a district court correctly concluded that *Daubert*
27  did not apply at the class certification stage. *Wal-Mart Stores v. Dukes*, 131 S. Ct.

28

2541, 2553-54 (2011). After *Dukes*, the Ninth Circuit addressed *Daubert's* application during the class certification stage and approved its application to expert testimony presented in support of an opposition to a motion for class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Numerous courts within the Ninth Circuit have applied a rigorous *Daubert* analysis during the pre-certification stage, providing support for Defendants' position here. *See, e.g.*, *See Cholakyan v. Mercedez-Benz, USA, LLC*, 281 F.R.D. 534, 541 (C.D. Cal. 2012) ("[**b**]efore addressing the merits of the certification motion, the court must consider the parties' exhaustive challenges under" *Daubert*.) (emphasis added); *Keegan v. Am. Hondo Motor Co.*, 284 F.R.D. 504, 514 (C.D. Cal. 2012) ("**Before** addressing the merits of the certification motion, the court must consider the parties' challenges under *Daubert* . . .") (emphasis added); *Stemple v. QC Holdings, Inc.*, 2014 WL 4409817, *7 (S.D. Cal. Sept. 5, 2014) ("When an expert's report or testimony is critical to class certification . . . a district court must conclusively rule on any challenge to the expert's qualifications or submission **prior** to ruling on a class certification motion . . . This is required 'even if the considerations overlap the merits of the case.'") (internal citations omitted)) (emphasis added).

Defendants' proposed deadline for pre-certification expert discovery and *Daubert* motions is provided in **Exhibit A** to the Rule 26(f) report.

### 2. Plaintiffs' Statement:

Defendants ask the Court to "trifurcate" pretrial discovery, with the first phase limited to discovery of Plaintiffs' "individual claims," the second phase confined to "class certification issues," and the third phase finally allowing "merits-based class discovery." Defendants' proposal is unworkable, inefficient and will lead to unnecessary collateral litigation and protracted delays. Accordingly, pre-trial discovery should proceed concurrently, as the Federal rules contemplate,

subject to a single cutoff date. As Judge Olguin recently observed, "[i]n light of *Dukes* and the 'rigorous analysis' requirement for class certification, many courts 'are reluctant to bifurcate class-related discovery from discovery on the merits.'" *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018). Bifurcating or trifurcating discovery in this case, thereby imposing arbitrary limitations on the scope of permissible discovery, will only inject a "slew of issues" causing unnecessary delays and increased costs to all parties. *True Health Chiropractic Inc v. McKesson Corp.*, No. 13-CV-02219-JST, 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015) (declining to bifurcate discovery). For the reasons discussed below, Defendants' proposal to carve discovery into three phases is inappropriate here.

a.   A showing of "good cause" has not been made.

"A court may grant a motion to stay or alter the sequence of discovery upon showing of good cause by the moving party." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 1915680, at *1 (N.D. Cal. May 8, 2013). To establish good cause, "courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2014 WL 12746902, at *1 (N.D. Ill. Feb. 24, 2014). The reasons offered in support of the Defendants' proposed discovery phases are based on "idle speculation" regarding the assumed success of Defendants' yet-to-be-filed dispositive motion and the presumed denial of Plaintiffs' as-yet unfiled motion for class certification. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (S.D. Cal. 1990) (holding that defendants' assumptions that its unfiled motions to dismiss would be granted and that plaintiff's unfiled motion for class certification would be denied were insufficient to establish good cause); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 175 (D.D.C. 2009) (denying motion to bifurcate discovery, finding "[d]efendants' attempt to pre-argue the class

certification issue is unpersuasive"); *In re Valence Tech. Sec. Litig.*, No. C 94-1542-SC, 1994 WL 758688, at *2 (N.D. Cal. Nov. 18, 1994) (finding defendant "has not made out a clear case of hardship or inequity to justify a stay of discovery" where it has "only argued in a conclusory fashion the future success of its yet-to-be-filed motion to dismiss"). Defendants' proposal is not supported by good cause.

> b.   The overriding purposes of ERISA will not be served.

Dividing discovery into multiple phases as advocated by Defendants is inefficient and would unduly delay the progress of this litigation. Defendants' phased discovery approach will not advance the purposes of ERISA or the Federal Rules of Civil Procedure. As the Ninth Circuit has stated:

> ERISA likewise reveals a purpose of removing obstacles in claimants' paths to the courts. Indeed, Congress expressly declared that a central policy goal in creating ERISA was to protect participants' interests ". . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). In keeping with Congress' goal of providing "ready access to the Federal courts," we must remain mindful that "ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans."

*Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006).

As discussed above, Defendants' alleged unlawful policies have had and continue to have a devastating impact on the lives of the children with ASD who are being denied access to medically necessary treatment. Defendants' alleged arbitrary curtailment of ABA treatment causes setbacks in the patients' social development and adversely impacts parents who are without the resources and tools to adequately help their autistic children. The potentially harmful effects that Defendants' allegedly unlawful policies have on autistic children and their families alone is a compelling reason to deny Defendants' proposal to protract this action through unnecessary and inefficient discovery "sequencing."

c.    Addressing Class Certification at "an early practicable time."

Plaintiffs propose to file their motion for class certification on or before January 28, 2019. Since no discovery has occurred to date, this will allow Plaintiffs to conduct discovery over the next six months, obtaining responsive documents and deposition testimony in support of class certification. Under Defendants' proposed schedule, commencement of discovery related to class certification issues would likely not begin until 9-12 months from now, delaying the filing of plaintiffs' motion for class certification by more than a year.[2] There is no justification for this delay.

First, Defendants' proposal to delay commencement of class certification discovery until the Court rules on Defendants' contemplated dispositive motion on Plaintiffs' individual claims is inconsistent with the mandate for early resolution of class certification issues. Rule 23, Fed. Civ. P., provides that class certification should occur "[a]t an early practicable time after a person sues or is sued as a class representative . . . ." Fed. R. Civ. P. 23(c)(1)(A). The Local Rules for the Central District of California support Rule 23's mandate by requiring that motions for class certification be filed within 90 days of a pleading purporting to commence a class action unless otherwise ordered by the Court.  L.R. 23-3.

Second, to the extent Defendants desire to conduct discovery and file an early motion for summary judgment, they are free to do so under Plaintiffs' proposed discovery schedule. There is no need to impose restrictions that would arbitrarily delay progress of the remainder of the claims in this litigation.

---

[2] Defendants propose to delay commencement of discovery related to class certification so they can engage in five months of discovery related to Plaintiffs' individual claims followed by a period for preparation, briefing, hearing and resolution of a dispositive motion relating to Plaintiffs' individual claims.

JOINT RULE 26(f) REPORT

Third, Defendants' unsupported speculation that their contemplated dispositive motion will be granted is presumptuous and erroneous. Defendants incorrectly contend that because Plaintiffs have allegedly "received all the benefits due under his ERISA plan," they have not suffered cognizable injuries and therefore lack standing to represent the Class.  This assertion ignores the allegations in the Second Amended Class Action Complaint. Plaintiffs on behalf of themselves and the Class challenge Defendants' utilization of impermissibly restrictive medical necessity criteria and claims determination guidelines for ABA therapy, as well as other policies and procedures adopted and applied across-the-board to requests for approval of ABA therapy. Plaintiffs and the Class seek a clarification that these challenged policies are improper, an injunction prohibiting Defendants from continuing to use the improper guidelines and policies to unlawfully deny ABA therapy, and implementation of a procedure for reprocessing prior claims improperly denied or reduced due to application of the overly restrictive guidelines.

To obtain the requested ABA therapy for Jake, Plaintiffs were repeatedly required to pursue independent review by the DMHC, which on each occasion determined that the hours of ABA therapy denied by Defendants were medically necessary.  Defendants thus refused to provide Plaintiffs all medically necessary benefits under the Plan until compelled to do so by the DMHC.

The complaint alleges the following facts, taken as true at this stage of the proceedings, establishing the requisite injury and standing:

- o Although the DMHC's repeated decisions have allowed Plaintiffs to receive the requested ABA therapy for their son, Plaintiffs will be required to make future requests for continued ABA therapy for Jake. Plaintiffs assert that, absent judicial intervention, Defendants will continue to unlawfully reduce or deny Jake's access to ABA therapy and require Plaintiffs to seek relief before the DMHC in order to receive medically necessary services provided under the Plan;

○ Absent the injunctive and equitable relief sought in this litigation, Defendants would be free to continue systematically denying access to ABA therapy unless compelled by the DMHC. The inherently transitory nature of the challenged conduct would allow Defendants to evade a judicial determination that the challenged conduct violates ERISA. The DMHC's decisions do not and cannot enjoin Defendants' unlawful conduct or require Defendants to permanently abandon the alleged unlawful denial of coverage for ABA therapy;

○ Defendants have a policy of systematically and arbitrarily reducing or denying claims requesting ABA therapy. Accordingly, Class members are entitled to have these wrongfully denied claims reprocessed and re-determined using generally accepted medical guidelines;

○ In addition to injunctive relief, Plaintiffs seek clarification of Defendants' Plan provisions and their policies, procedures and guidelines for determining claims for coverage of ABA therapy; and

○ Notwithstanding the DMHC's determinations, Plaintiffs have been injured by Defendants' unlawful conduct by being forced to limit treatment for their son and by the time and inconvenience associated with their efforts to secure treatment for Jake.

Defendants' contention that Plaintiffs lack standing because Jake has received a favorable benefit is incorrect. ERISA permits a participant to bring an action not only to recover "benefits due" under the plan but also to "enforce [a participant's] rights under the terms of the plan, or to clarify [a participant's] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendants' assertion that Plaintiffs must demonstrate they were actually denied benefits in order to demonstrate causation disregards these broad ERISA remedies. *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2017 WL 3478775, at *12 (N.D. Cal. Aug. 14, 2017); *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 509-10 (N.D. Cal. 2017) ("Plaintiffs claim that the Guidelines violate each of their plans because the Guidelines do not conform to generally accepted standards of care. As the Ninth Circuit held in *Saffle*, this violation is actionable under ERISA,

1    and the remedy for such a violation is reprocessing of class members' claims.").

2    Moreover, with respect to claims for breach of fiduciary duty, the Ninth
3    Circuit has found that "Congress intended to make fiduciaries culpable for certain
4    ERISA violations even in the absence of actual injury to a plan or participant."
5    *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990); *see*
6    *also Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198,
7    1203 (9th Cir. 2003) ("The question of whether a fiduciary violated his fiduciary
8    duty is independent from the question of loss."); *Wit*, 2017 WL 3478775, at *12
9    ("Under *Shaver*, Plaintiffs may bring an action to enforce [defendant's] fiduciary
10   obligations without establishing that the alleged violation has caused an actual loss,
11   such as a denial of benefits.").

12   Plaintiffs likewise have standing to seek clarification of their rights to future
13   benefits, as Defendants cannot demonstrate that they will not again subject
14   Plaintiffs to a denial of benefits in the future.  *See Lamuth v. Hartford Life &*
15   *Accident Ins. Co.*, 30 F. Supp. 3d 1036, 1045 (W.D. Wash. 2014) (finding that
16   plaintiff's claim for clarification of rights was not moot despite the fact that insurer
17   began paying benefits after litigation was commenced, noting that "[g]iven
18   Hartford's equivocal conduct to date, it has failed to demonstrate that it is
19   'absolutely clear' that it will not 'return to its old ways,' and again subject Dr.
20   Lamuth to a denial of benefits").

21   Thus, Defendants' conclusory speculation that they may obtain summary
22   judgment is unsupported and presents no good cause for the Court to impose
23   arbitrary limits on the scope and timing of pre-trial discovery.  Their self-serving
24   contention that class certification may be denied fares no better. *In re Rail Freight,*
25   258 F.R.D. at 175 ("The Court will not accept defendants' 'glowing assessment' of
26   its own arguments—namely, that class certification will fail or be substantially
27   narrowed—'as a reason to bifurcate.'"); *see also Wit v. United Behavioral Health,*

28

JOINT RULE 26(f) REPORT

*Inc.*, 317 F.R.D. 196 (N.D. Cal. 2016) (certifying class of plan participants and beneficiaries who were denied access to full benefits for residential treatment facilities resulting from defendant's use of overly restrictive claim determination and level of care guidelines).

### d.   Judicial Economy.

Defendants' proposed trifurcation of discovery will not advance judicial economy but will, instead, only protract these proceedings and mire the parties and the Court in collateral arguments over whether particular discovery requests involve "individual" discovery, "class" discovery or "merits" discovery.

Defendants offer no practical method of defining the "blurry, if not spurious" line separating class discovery from merits discovery. *In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004); *see also Ahmed*, 2018 WL 501413, at *3 ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."). As many courts have recognized, "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." *Gray*, 133 F.R.D. at 41; *see also In re Semgroup Energy Partners, L.P., Sec. Litig.*, No. 08-MD-1989-GKF-FHM, 2010 WL 5376262, at *3 (N.D. Okla. Dec. 21, 2010) ("[D]iscovery related to class certification is so closely intertwined with merits discovery that bifurcation would be unworkable."); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 12-CV-5162, 2015 WL 11120408 (W.D. Ark. June 18, 2015) (same); *In re Rail Freight*, 258 F.R.D. 167 (same). This is unsurprising given the Supreme Court's observation that "[t]he class determination

1   generally involves considerations that are enmeshed in the factual and legal issues

2   comprising the plaintiff's cause of action." *Dukes*, 564 U.S. at 351.[3]

3          Finally, implementing multiple phases of discovery is a recipe for endless

4   discovery disputes, allowing Defendants to withhold responsive material based on

5   their own unilateral determination of relevance and timeliness. It is likewise an

6   invitation for delays, inefficiencies and duplicative discovery. Numerous courts

7   have reached this same conclusion. *True Health Chiropractic Inc.*, 2015 WL

8   273188, at *2 ("Thus, bifurcation could raise a slew of issues as to what discovery

9   relates to the class, as opposed to the named plaintiffs, thereby causing additional

10  litigation regarding the distinction between the two."); *In re Groupon*, 2014 WL

11  12746902, at *1 (noting that "several courts have noted that bifurcation can actually

12  increase the costs of litigation because of disputes over what constitutes merits and

13  what constitutes class discovery"); *In re Hamilton Bancorp, Inc. Sec. Litig.*, No. 01

14  C 0156, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) ("[B]ifurcation may well

15  increase litigation expenses by protracting the completion of discovery, coupled

16  with endless disputes over what is 'merit' versus 'class' discovery."); *see also In re

17  Rail Freight*, 258 F.R.D. at 174 ("Concurrent discovery is more efficient when

18  bifurcation would result in significant duplication of effort and expense to the

19  parties.") (citation omitted).

20                    e.    Expert Discovery.

21         Plaintiffs agree that if any party submits expert reports during the class

22  certification process, the opposing party is entitled to take discovery from the

---

23  [3] *See also Manual for Complex Litig., 4th, § 21.14* (noting that there "is not always

24  a bright line between" merits and certification discovery, that "[c]ourts have

25  recognized that information about the nature of the claims on the merits and the

        proof that they require is important to deciding certification," and that "[a]rbitrary

26  insistence on the merits/class discovery distinction sometimes thwarts the informed

27  judicial assessment that current class certification practice emphasizes").

28

experts, submit responsive reports and pursue *Daubert* challenges.  That is why, under Plaintiffs' proposal, the parties will meet and confer promptly after class certification submissions are filed to discuss what discovery is needed, whether *Daubert* motions will be filed and an appropriate briefing schedule addressing and accommodating the parties' respective needs.

f.   <u>Conclusion.</u>

Plaintiffs' proposed schedule concerning discovery is far less complicated and more efficient than Defendants' bid for trifurcated discovery and will avoid needless delays and motion practice.

**G.   Whether a Protective Order Will be Needed**

The parties will submit a Stipulation for Protective Order for consideration and entry by the Court.

**H.   Proposed Pretrial and Trial Schedule**

The parties' respective positions on the proposed pretrial and trial schedule are set forth in the comparative table attached as **Exhibit A**.

The parties agree that it is premature for the Court to set a trial date or for the parties to estimate trial length.  Future rulings may impact the length of trial and the time it will take for the parties to complete the discovery needed in advance of trial. Accordingly, the parties jointly request that the Court set a status conference after ruling on Plaintiffs' motion for class certification to address an appropriate trial setting in this matter.

**I.   Other Orders**

Other than the proposed Protective Order and order regarding ESI discovery referenced above, the parties are not aware of any other orders that need to be entered by this Court under Federal Rules of Civil Procedure 16(b) and 26(c) at this

26

time. They do, however, reserve all rights to seek subsequent modifications to any protective order and additional orders as the need may arise.

## VI.   POSSIBILITIES FOR PROMPT SETTLEMENT

### A.   Plaintiffs' Statement:

Plaintiffs are amenable to engaging in settlement discussions promptly after the completion of preliminary discovery. In accordance with Local Rule 16-15.4, Plaintiffs believe ADR Procedure No. 3 is the most appropriate mandatory settlement procedure for this case.  Plaintiffs submit that a non-judicial dispute resolution procedure before a private mediator presents the best mechanism and the opportunity to resolve this litigation.

### B.   Defendants' Statement:

The parties have not conducted any settlement negotiations to date, but Defendants are amenable to engaging in settlement discussions after the completion of preliminary discovery. Defendants agree that ADR Procedure No. 3 is the most appropriate mandatory settlement procedure for this case and a non-judicial dispute resolution procedure before a private mediator presents the best mechanism and the opportunity to resolve this litigation. Should this Court accept Defendants' proposed phased approach to discovery, such mediation relating to Plaintiffs' individual claims should occur before November 1, 2018.

## VII.   AGREEMENT REGARDING ELECTRONIC SERVICE

The parties agree to electronically serve any document, including all correspondence, exhibits or attachments thereto, that is not filed with the Court. Electronic service, including service through the Court's electronic filing system, is deemed equivalent to service by hand for purposes of calculating response deadlines and other relevant dates under the Federal Rules of Civil Procedure and

1   Local Rules. For documents not filed through the Court's electronic filing system,

2   electronic service made prior to five p.m. Pacific Time shall be deemed served on

3   that day.

4
5   Dated:  June 27, 2018.              BONNETT FAIRBOURN FRIEDMAN
                                          & BALINT, P.C.

6                                      By:    /s/ *Andrew S. Friedman*
                                          Andrew S. Friedman (*admitted pro hac vice*)
7                                         2325 E. Camelback Road, #300
                                          Phoenix, AZ 85016
8                                         Telephone: (602) 274-1100
                                          Facsimile:  (602) 274-1199
9                                         Email: afriedman@bffb.com

10                                        Randy D. Curry (Bar No. 119636)
                                          LAW OFFICES OF RANDY D. CURRY
11                                        2901 W. Coast Highway, Suite 200
                                          Newport Beach, CA 92663
12                                        Telephone: (949) 258-4381
                                          Facsimile: (949) 258-4382
13                                        Email: randydcurrylaw@gmail.com

14                                        *Attorneys for Plaintiffs and the Proposed Class*

15  Dated:  June 27, 2018.              MANATT, PHELPS & PHILLIPS, LLP

16                                     By: /s/ *Joseph E. Laska**
17                                        Joseph E. Laska (Bar No. 221055)
                                          One Embarcadero Center, 30th Floor
18                                        San Francisco, CA 94111
                                          Telephone: (415) 291-7400
19                                        Facsimile: (415) 291-7474
                                          Email: jlaska@manatt.com

20                                        MANATT, PHELPS & PHILLIPS, LLP
21                                        GREGORY N. PIMSTONE (Bar No. 150203)
                                          Email:  gpimstone@manatt.com
22                                        LUKE L. PUNNAKANTA (Bar No. 293488)
                                          Email:  lpunnakanta@manatt.com
23                                        11355 West Olympic Boulevard
                                          Los Angeles, CA 90064-1614
24                                        Telephone: (310) 312-4000
                                          Facsimile: (310) 312-4224

25                                        *Attorneys for Defendant*
26                                        *CALIFORNIA PHYSICIANS' SERVICE dba*
                                          *BLUE SHIELD OF CALIFORNIA*

27

28                                        28
                                    JOINT RULE 26(f) REPORT

Dated:  June 27, 2018.          MAYNARD, COOPER & GALE, LLP

By:   /s/ *Tara L. Blake**
Tara L. Blake (Bar No. 314471)
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 646-4700
Facsimile:  (205) 254-1999
Email: tblake@maynardcooper.com

*Attorneys for Defendants*
*MAGELLAN HEALTH, INC. and HUMAN*
*AFFAIRS INTERNATIONAL OF CALIFORNIA*

* Under Local Rule 5-4.3.4(a)(2)(i), the filer attests
that all other signatories listed, and on whose behalf
the filing is submitted, concur in the filing's content
and have authorized the filing.

JOINT RULE 26(f) REPORT