MANATT, PHELPS & PHILLIPS, LLP
GREGORY N. PIMSTONE (Bar No. 150203)
Email: gpimstone@manatt.com
JUSTIN JONES RODRIGUEZ (Bar No. 279080)
Email: jjrodriguez@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
JOSEPH E. LASKA (Bar No. 221055)
Email: jlaska@manatt.com
NATHANIEL A. Cohen (Bar No. 289142)
Email: nacohen@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, California 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for Defendant
CALIFORNIA PHYSICIANS' SERVICE dba
BLUE SHIELD OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SCOTT CROSBY and KARISSA CROSBY, individually, and on behalf of their son JAKE CROSBY,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; MAGELLAN HEALTH, INC.; HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA and DOES 1-100, inclusive<br><br>Defendants. | Case No. 8:17-CV-01970-CJC-JDE<br>Hon. Cormac J. Carney<br><br>**BLUE SHIELD'S OBJECTIONS TO EXPERT REPORT OF DRS. FRANK G. FOX AND JONATHAN F. FOX IN SUPPORT OF PLAINTIFFS' REPLY IN FURTHER SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION**<br><br>Date:  September 24, 2020<br>Time:  1:30 p.m.<br>Courtroom: 9B |

Defendant California Physicians' Service dba Blue Shield of California objects to the Expert Report of Frank G. Fox, Ph.D. and Jonathan F. Fox, Ph.D. in Support of Plaintiffs' Reply in Further Support of Amended Motion for Class Certification (Exhibit 52 to ECF 152-2 (public version) and 153-2 (under seal version) ("Fox Report") as follows.

## GENERAL OBJECTIONS

**I.    The entire Fox Report is improper new evidence on reply.**

The Fox Report is improper in its entirety because it is new evidence offered for the first time on reply. "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (citing *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 894-95 (1990)). Plaintiffs should not be permitted to rely on new arguments and evidence on reply, particularly where, as is the case here, Plaintiffs offer the evidence only to prove an element that they were required to prove in their opening brief. *See Delgadillo v. Woodford*, 527 F. 3d 919, 930 n.4 (9th Cir. 2008).

Plaintiffs cite the Fox Report five times in their reply—once on numerosity, once on ascertainability, and three times to argue that Defendant's improperly denied a portion of the ABA hours that ASC originally requested for Jake Crosby. In other words, Plaintiffs rely on the Fox Report to analyze the same class certification elements they were required to prove in their opening brief.

On numerosity, Plaintiffs rely on Drs. Fox to now argue that there are at least 542 class members in their new "revised down" group. (*See* ECF 153-1 at 3:8-14.) In their opening brief, Plaintiffs concluded that there were more than 1,000 class members, apparently by including every single ABA recipient in the proposed class. (Motion at 16:26-17:3.) Plaintiffs should not be permitted to introduce new evidence in support of a new theory on reply.

As to ascertainability, Plaintiffs rely on Drs. Fox to conclude that "every proposed class member's ABA hours were reduced or partially denied, and was therefore harmed, as a result of the development and use of the ABA Guidelines …." (ECF 153-1 at 17:26-18:1.) But Drs. Fox are not clinicians and are not qualified to opine on the reasons that each putative class member's hours were revised down, reduced, or denied; whether any downward change had anything to do with the Magellan ABA Guidelines; or whether any putative class member suffered any alleged harm as a result.

Plaintiffs also rely on Drs. Fox to point out that Jake Crosby was harmed because he was "red-flagged" and "Defendants us[ed] the challenged criteria in the ABA Guidelines to press his provider to ask for fewer hours, and partially denying his ABA authorization requests …." (ECF 153-1 at 19:27-20-3; *see also, id.* at 20:24-27, 22:17-21.) But Drs. Fox are not clinicians and are not qualified to opine on any alleged "harm" to the Crosbys, the decisions of his providers, or the reasons for any partial denials. Moreover, Jake has always received 100% of the ABA hours his provider requested on his behalf. Jake's parents testified that he has never experienced any interruptions in his ABA services other than ones they themselves requested for family vacations, holidays, and other reasons. (Ex. J in the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification at 34:23-35:12, 84:17-19; Ex. I in the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification at 107:16-23, 132:1-24, 138:18-139:16, 145:8-25.)

**II.   The entire Fox Report is improper clinical testimony because Drs. Fox are not qualified clinicians.**

The entire Fox Report is an analysis of clinical data that is outside the scope of the Foxes' expertise. Both Drs. Fox are economists, not clinicians. (*See* Fox Report, pp. 3-4.) Yet the entire Fox Report relies on clinical ABA claims, authorization, and appeals data. (*See, e.g.*, *id.* ¶ 4.1, 6.1.) And Drs. Fox purport to

reach opinions that are also clinical in nature. Specifically, Drs. Fox improperly opine on the nature of "care shaping" communications that occurred, if at all, between providers and a HAI-CA clinician, and on the reasons that ABA hours were revised down, reduced, or denied. (*See, e.g.*, *id.*, ¶ 3.) Drs. Fox are not qualified to opine on clinical data, clinical communications, or clinical decision making. *See Gebhardt v. Mentor Corp.*, 15 F. App'x 540, 542 (9th Cir. 2001) (non-clinician not qualified to opine on surgical decision making).

### III. The entire Fox Report is irrelevant damages testimony.

The Fox Report states that Drs. Fox were "requested to provide an expert opinion regarding reasonable estimates of the value of [the] selective reductions and partial denials across Blue Shield Insureds who utilized ABA therapy, as well as for the specified Study Population over the Study Period." (Fox Report, Section 2.1 at 5 (footnotes omitted).) The Fox Report thus purports to determine alleged damages, even though Plaintiffs say they are not seeking monetary relief in this case. The Fox Report is therefore irrelevant and inadmissible under Federal Rule of Evidence 402.

### IV. The entire Fox Report is speculative.

The Fox Report is also highly speculative. It assumes that authorization requests that were amended or withdrawn by providers actually state the correct number of medically necessary ABA hours, even though those requests were later *voluntarily* withdrawn or revised by the clinicians. *See Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 859-61(9th Cir. 2014) ("Speculative testimony is inherently unreliable.") (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) and *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 590 (1993)); *Samuels v. Holland American Line-USA Inc.*, 656 F.3d 948, 952-953 (9th Cir. 2011) (Courts may properly exclude expert testimony that is purely speculative). Drs. Fox also lack the clinical expertise to make a medical necessity determination about any single putative class member, let alone about the entire putative class.

## SPECIFIC OBJECTIONS

In addition to the general objections above, Blue Shield asserts the following specific objections to certain portions of the Fox Report.

| EVIDENCE | OBJECTION |
|---|---|
| **Section 3.1.1 at 5:** "Method 1: After receiving an initial authorization request from ABA therapy providers, prior to formally entering the request for adjudication Magellan either explicitly or implicitly communicated coverage intentions and its definition of medical necessity, such that providers would then resubmit revised authorization requests for lower levels of care that conformed to Magellan's position regarding coverage. Authorization requests not subsequently revised were denied in part (i.e., approving lower number of hours of ABA therapy)." | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106); Speculative.** This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert that HAI-CA communicated coverage intentions to providers and that those communications cause providers to lower the number of ABA hours they requested. Not only do Drs. Fox fail to cite a single HAI-CA communication, but they also are unqualified to opine on clinical data, clinical communications, or clinical decision making. *See Gebhardt v. Mentor Corp.*, 15 F. App'x 540, 542 (9th Cir. 2001) (non-clinician not qualified to opine on surgical decision making). Their assumption that providers "revised" their authorization requests based only on a hypothetical statement of "coverage intentions" is bare speculation. |
| **Section 3.1.2 at 5:** "Method 2: After receiving an initial authorization request from ABA therapy providers, prior to formally entering the request for adjudication Magellan either explicitly or implicitly communicated coverage intentions and its definition of medical necessity such | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106); Speculative.** This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert that |

| EVIDENCE | OBJECTION |
|---|---|
| that in following authorization periods, providers would request fewer hours to conform to Magellan's position regarding coverage." | HAI-CA communicated coverage intentions to providers and that those communications cause providers to lower the number of ABA hours they requested. Not only do Drs. Fox fail to cite a single HAI-CA communication, but they also are unqualified to opine on clinical data, clinical communications, or clinical decision making. *See Gebhardt v. Mentor Corp.*, 15 F. App'x 540, 542 (9th Cir. 2001) (non-clinician not qualified to opine on surgical decision making). Their assumption that providers "revised" their authorization requests based only on a hypothetical statement of "coverage intentions" is bare speculation. |
| **Section 3.4 at 6:** "The final authorization files provided by Magellan Health have been effectively "cleaned" of nearly all partial authorizations. This is evidenced by the fact that in the authorization files HAICA_ 0205262 and HAI-CA_0205765, over 99% of all authorization requests do not have denials of any type. Magellan Health care shaping procedures, which rely on providers submitting revised requests with fewer hours, are not reflected in the final authorization requests present within these files." | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106).** This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert that Defendants "cleaned" authorization files because the files include only formal authorization requests and responses. Drs. Fox provide no basis for their assertion that authorization data should also include data on case management discussions or withdrawn authorization requests. Further, Drs. Fox are not qualified to opine on utilization management practices. |
| **Section 6.4 at 14:** "Magellan's medical necessity guidelines placed limits on ABA | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE** |

| EVIDENCE | OBJECTION |
|---|---|
| therapy services based off member age and utilization history.[9] This included the exclusion of high intensity ("Comprehensive Intervention") ABA therapy services to individuals over the age of 7 and those with therapy durations of two years or more." | 602); Misleading (FRE 106); Hearsay (FRE 801-803).<br>This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert that the medical necessity criteria at issue include criteria measuring the appropriate length and intensity of continued ABA therapy based on a specific time-frame, intensity, or age range. Instead of quoting the actual criteria for continued care in the Magellan ABA Guidelines and Blue Shield ABA Medical Policy, Drs. Fox selectively misquote the definition of "comprehensive intervention" in the Magellan ABA Guidelines to create the incorrect impression that HAI-CA and Blue Shield use age and duration of care caps. No such caps exist.<br><br>Actual putative class authorization data demonstrates that there were almost no clinical denials of comprehensive intervention (21 or more hours of ABA) to members who were older than six or who had previously received comprehensive intervention for two years. (Ex. A to the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (Declaration of Bruce Deal), ¶¶ 16-18.)<br><br>In addition, to the extent that Drs. Fox purport to characterize (albeit wrongly) the ABA Guidelines, their testimony is inadmissible hearsay not falling into any exception. |

| EVIDENCE | OBJECTION |
|---|---|
| **Section 6.4 at 14:**<br>"Furthermore, based on review of the seven files of utilization analyses by Magellan Health (see Section 4), Magellan's documents, and analysis of member characteristics, individuals receiving high intensity ABA therapy services were disproportionately targeted for care shaping interventions.[10]" | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106).**<br>This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert there was a "disproportionate[] target[ing]" of "individuals receiving high intensity" treatment. This is incorrect. Members have different authorization levels depending on the hours of therapy that are medically necessary. The Magellan ABA Guidelines even note that "[m]ore than 40 hours will be approved where medically necessary for the member." (Ex. V to the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification at 604, 598.)<br><br>This is also an improper opinion because Drs. Fox are not qualified to opine on clinical data or clinical decision making. *See Gebhardt v. Mentor Corp.*, 15 F. App'x 540, 542 (9th Cir. 2001) (non-clinician not qualified to opine on surgical decision making). |
| **Section 6.4 at 19-20:**<br>"Magellan Care Guidelines for outpatient ABA therapy define Comprehensive and Focused Interventions as a range of '21 to 40 hours per week' for the former and 'up to 20 hours per week' for the latter.[18] However, these Guidelines further constrain these treatment ranges in the discussion of 'Intensity of Services,' | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106); Hearsay (FRE 801-803).**<br>This opinion is not based on sufficient facts or data as required by Federal Rule of Evidence 702(b). Drs. Fox assert that the medical necessity criteria at issue include criteria measuring the |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

BLUE SHIELD'S OBJECTIONS TO EXPERT REPORT
OF FRANK G. FOX AND JONATHAN F. FOX
CASE NO. 8:17-CV-01970-CJC-JDE

| EVIDENCE | OBJECTION |
|---|---|
| where, for example, in its 2018-2019 Magellan Care Guidelines, it states: 'Comprehensive services are generally to be restricted to younger children . . . Comprehensive ABA of *up to 40 hours per week is limited* to treatment where there are multiple targets across most or all developmental domains,' and for Focused Interventions, it states 'Focused Interventions *are generally authorized* for 10-25 hours per week, (emphasis added).'" | appropriate length and intensity of continued ABA therapy based on a specific time-frame, intensity, or age range. Instead of quoting the actual criteria for continued care in the Magellan ABA Guidelines and Blue Shield ABA Medical Policy, Drs. Fox selectively misquote the definition of "comprehensive intervention" in the Magellan ABA Guidelines to create the incorrect impression that HAI-CA and Blue Shield use age and duration of care caps. No such caps exist.<br><br>Actual putative class authorization data demonstrates that there were almost no clinical denials of comprehensive intervention (21 or more hours of ABA) to members who were older than six or who had previously received comprehensive intervention for two years. (Ex. A to the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (Declaration of Bruce Deal), ¶¶ 16-18.)<br><br>In addition, to the extent that Drs. Fox purport to characterize (albeit wrongly) the ABA Guidelines, their testimony is inadmissible hearsay not falling into any exception. |
| **Section 6.4 at 20:**<br>". . . the correspondence of Magellan employees documented in HAI-CA_01 10035, HAI-CA_0076528, and HAI-CA_0065451 specifically reference targeting individuals with 25+ hours | **Improper Opinion Testimony (FRE 702, 703); Lack of Personal Knowledge/Lack of Foundation (FRE 602); Misleading (FRE 106); Hearsay (FRE 801-803).**<br>Drs. Fox incorrectly states that |

| EVIDENCE | OBJECTION |
|---|---|
| per week of ABA therapy for care shaping to reduce costs.[20] It is clear Magellan directly targets certain Insureds who utilize ABA therapy as a mechanism to save its coverage expenses." | individuals receiving high intensity ABA services are disproportionately targeted for care shaping interventions and are restricted from receiving comprehensive care. To the contrary, individual members have different authorization levels depending on medical necessity. The Magellan ABA Guidelines even note that "[m]ore than 40 hours will be approved where medically necessary for the member." (Ex. V to the Appendix of Evidence in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification, pp. 598 & 604.)<br><br>In addition, Drs. Fox's use of the email correspondence between HAI-CA personnel constitutes inadmissible hearsay. |

Dated: August 24, 2020

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Joseph E. Laska
Joseph E. Laska
Attorneys for Defendant
CALIFORNIA PHYSICIANS' SERVICE
dba BLUE SHIELD OF CALIFORNIA